IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BOBBY DEAN BUCKNER,

             Petitioner,              No. CIV S-08-2279 JAM DAD P

    vs.

MIKE MCDONALD[1], Warden,           ORDER AND

             Respondent.         <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on July 11, 2006 in the Sacramento County Superior Court on charges of committing lewd acts, some aggravated by the use of force or violence, against a child under the age of 14 in violation of California Penal Code §§ 288(a) and (b)(1).  He seeks federal habeas relief on the grounds that: (1) incorrect jury instructions, and their cumulative effect, prejudiced him; (2) there was insufficient evidence introduced at trial to show he used a gun in commission of the

---

[1]  Petitioner named T. Felker as the respondent in this matter.  In the Answer to the Petition, respondent identified Mike McDonald, the current acting Warden of High Desert State Prison, as the respondent.  <u>See</u> <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994) ("A petitioner for habeas corpus relief must name the state officer having custody of him or her as the respondent to the petition."); Rule 2(a), 28 U.S.C. foll. § 2254.  Accordingly, this court now substitutes in McDonald as the correct respondent.

1  aggravated offenses; (3) the trial court erroneously failed to instruct on a lesser included offense

2  of misdemeanor child molestation.  Upon careful consideration of the record and the applicable

3  law, the undersigned will recommend that petitioner's application for habeas corpus be denied.

4                                         PROCEDURAL BACKGROUND

5          On July 11, 2006, a jury found petitioner guilty of committing lewd acts and

6  aggravated lewd acts against a child under the age of 14.  (Notice of Lodging Documents on

7  November 20, 2009 (Doc. No. 17), Clerk's Transcript on Appeal (CT) at 256-267.)  On August

8  18, 2006, petitioner was sentenced to 68 years in state prison.  (Id. at 328.)

9          Petitioner appealed his judgment of conviction to the California Court of Appeal

10 for the Third Appellate District.  (CT at 331 (Notice of Appeal).)  On November 29, 2007, the

11 judgment was affirmed in a reasoned opinion.  (Resp't's Lod. Doc. 4 (hereinafter Court of

12 Appeal Opinion).)  Petitioner then filed a petition for review with the California Supreme Court

13 (Resp't's Lod. Doc. 5), in which he claimed that three jury instructions given at his trial were

14 erroneous and that cumulative instructional errors deprived him of his right to due process.  On

15 February 13, 2008, the California Supreme Court summarily denied that petition.  (Resp't's Lod.

16 Doc. 6.)

17         On September 5, 2008, petitioner filed a petition for writ of habeas corpus in the

18 Sacramento County Superior Court in which he claimed that there was insufficient evidence

19 introduced at trial that he used a gun in the aggravated offenses, and that the trial court

20 erroneously failed to instruct the jury on the lesser included offense of misdemeanor child

21 molestation.  (Resp't's Lod. Doc. 7.)  On October 3, 2008, the Sacramento County Superior

22 Court denied habeas relief in a reasoned opinion, stating that petitioner should have raised these

23 claims on appeal.  (Resp't's Lod. Doc. 8 (hereinafter Superior Court Opinion).)  On January 14,

24 2009, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for

25 the Third Appellate District, again raising claims of insufficient evidence and failure to instruct

26 on a lesser included offense.  (Resp't's Lod. Doc. 9.)  On January 22, 2009, the Court of Appeal

1  summarily denied this petition.  (Resp't's Lod. Doc. 10.)  On February 13, 2009, petitioner

2  sought a writ of habeas corpus on these same grounds in the California Supreme Court.

3  (Resp't's Lod. Doc. 11.)  On July 8, 2009, the California Supreme Court denied the petition.

4  (Resp't's Lod. Doc. 12.)

5          On September 29, 2008, petitioner filed a petition for habeas corpus in this court.

6  (Doc. No. 1.)  On August 25, 2009, this court ordered petitioner to either file an amended petition

7  containing all of his exhausted claims or file a declaration explaining the status of any pending

8  habeas proceedings in state court.  (Doc. No. 9.)  On September 18, 2009, petitioner filed the

9  instant amended petition.  (Doc. No. 10 (hereinafter Amended Petition).)

10         As all the claims set forth in the Amended Petition have been presented to the

11  California Supreme Court either on direct appeal or in a habeas petition, respondent concedes

12  that petitioner has exhausted his five stated grounds for relief "to the extent interpreted by

13  Respondent herein."  (Doc. No. 16 (hereinafter Answer) at 2.)

14                              FACTUAL BACKGROUND

15  _____In its unpublished memorandum and opinion affirming petitioner's judgment of

16  conviction on appeal, the California Court of Appeal for the Third Appellate District provided

17  the following factual summary:

18          Defendant lived with his girlfriend, Erica, her daughter, A.C., and
            Erica's two sons. While they were living together, defendant and
19          Erica had a son.

20          When A.C. was seven years old, defendant went into A.C.
            bedroom one night while she was sleeping. She awakened while
21          defendant was touching her chest and vagina. The next day,
            defendant took A.C. into his bedroom. He put a gun in A.C.'s
22          mouth and told her that if she ever said anything about what
            happened, he would kill her, her mother, or one of her brothers.
23
24          After that, and for several years, defendant went into A.C.'s room
            almost every night or had her come into his room when Erica was
            gone. He touched A.C.'s chest and vagina, made her touch and rub
25          his penis, and rubbed his penis between her buttocks. He also
            threatened her when she hesitated or objected. A.C. did not report
26  /////

3

1    the molestations because she was afraid of what defendant would do.

2

3    When a police officer and, on another occasion, Child Protective Services workers asked her, A.C. denied that defendant had molested her. Later, A.C. told a family friend.

4

5    With instructions from sheriff's deputies, A.C. made two recorded telephone calls to defendant. During those conversations, A.C. asked why defendant had molested her. He apologized and said it was wrong and should never have happened. He said he did it because he was stupid. He was not getting along with Erica during that time. He said that he felt bad and asked her to forgive him.

6

7

8    At trial, defendant admitted that he touched A.C. inappropriately, but only once. He was under the influence of drugs and alcohol at the time.

9

10    The jury convicted defendant of two counts of lewd conduct on a child under 14 (Pen. Code, § 288, subd. (a)) and 10 counts of aggravated lewd conduct on a child under 14 (Pen. Code, § 288, subd. (b)(1)).

11

12

13    (California Court of Appeal Opinion at 2-3.)

14    <u>ANALYSIS</u>

15    I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

16    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

17    some transgression of federal law binding on the state courts. <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860,

18    861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v.</u>

19    <u>Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the

20    interpretation or application of state law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

21    <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas

22    corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377

23    (1972).

24    This action is governed by the Antiterrorism and Effective Death Penalty Act of

25    1996 ("AEDPA"). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

26    1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting

1   habeas corpus relief:

2        An application for a writ of habeas corpus on behalf of a person in
         custody pursuant to the judgment of a State court shall not be
3        granted with respect to any claim that was adjudicated on the
         merits in State court proceedings unless the adjudication of the
4        claim -

5             (1) resulted in a decision that was contrary to, or involved
         an unreasonable application of, clearly established Federal law, as
6        determined by the Supreme Court of the United States; or

7             (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
8        State court proceeding.

9   See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

10  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

11  does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

12  of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

13  also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

14  we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

15  error, we must decide the habeas petition by considering de novo the constitutional issues

16  raised.").

17        The court looks to the last reasoned state court decision as the basis for the state

18  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

19  state court decision adopts or substantially incorporates the reasoning from a previous state court

20  decision, this court may consider both decisions to ascertain the reasoning of the last decision.

21  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

22  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

23  habeas court independently reviews the record to determine whether habeas corpus relief is

24  available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle

25  v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not

26  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

1   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

2   de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

3   II.      Petitioner's Claims

4          A.      Jury Instruction Error

5                 Four of petitioner's five claims allege jury instruction error.  After setting forth the

6   applicable legal principles, the court will evaluate these claims below.

7                 A challenge to jury instructions does not generally state a federal constitutional

8   claim.  See Middleton, supra, 768 F.2d at 1085 (citing Engle v. Isaac, 456 U.S. 107, 119 (1982));

9   Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  However, a "claim of error based

10  upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for

11  federal habeas corpus relief where its impact so infects the entire trial that the resulting

12  conviction violates the defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 672

13  (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Prantil v.

14  California, 843 F.2d 314, 317 (9th Cir. 1988).  The analysis for determining whether a trial is "so

15  infected with unfairness" as to rise to the level of a due process violation is similar to the analysis

16  used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error

17  had "a substantial and injurious effect" on the outcome.  See Sarausad v. Porter, 479 F.3d 671,

18  692 (9th Cir. 2007); Thomas v. Hubbard, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on

19  other grounds by Payton v. Woodford, 299 F.3d 815, 828 n.11 (9th Cir. 2002).

20                1.  Incorrect Pronoun (Ground One)

21                Dr. Anthony Urquiza, a child psychologist, was called as an expert witness for the

22  prosecution at petitioner's trial and testified that children who are sexually abused often don't tell

23  anyone about the abuse for a long time.  (Reporter's Transcript (RT) at 586-597.)  Petitioner

24  takes issue with CALCRIM No. 1193, pursuant to which the jury at his trial was instructed as

25  follows:

26  /////

6

> Dr. Urquiza's testimony is not evidence that the defendant committed any of the crimes charged against him.
>
> You may consider this evidence only in deciding whether or not [the victim's] conduct was not inconsistent with the conduct of someone who was been molested, and <u>in evaluating the believability of his testimony.</u>

(Clerk's Transcript (CT) at 243) (emphasis added).  Petitioner asserts that this instruction mistakenly used the pronoun "his" (suggesting petitioner's) testimony, when it actually concerned the believability of "her" (i.e., the victim's) testimony.  (<u>See</u> Amended Pet. at 4.[2])

The California Court of Appeal rejected petitioner's argument that this use of the wrong pronoun prejudiced him or constituted a due process violation, reasoning as follows:

> Although we agree the trial court used the wrong pronoun in the jury instruction, we reject defendant's argument that the error requires reversal because (A) it is not at all clear that the jury would have understood the instruction as referring to defendant's credibility and (B) the error was harmless beyond a reasonable doubt.
>
> * * *
>
> A. Pronominal Reference
>
> It is apparent that the trial court should have used "her" instead of "his" in the last sentence of this instruction. The jury was to use Dr. Urquiza's testimony on child sexual abuse accommodation syndrome to evaluate A.C.'s credibility. But we do not agree that the mistaken pronoun led the jury to evaluate defendant's credibility using Dr. Urquiza's testimony for two reasons: (1) it is more likely that "his" would refer back to Dr. Urquiza, not defendant, and (2) evaluating defendant's credibility using Dr. Urquiza's testimony would be illogical.
>
> 1. Reference
>
> Defendant argues: "In the instruction given to the jury, the last male subject referred to was [defendant], and thus the pronoun 'his' refers to [defendant]." This rather simplistic view of the syntax is unconvincing. The pronominal reference was "his testimony." The only other explicit use of the term "testimony" in the paragraph pertains to Dr. Urquiza's testimony. Therefore, in

---

[2] References to the Amended Petition are based on the page numbers assigned by CM/ECF, not the page numbers on the petition form.

context, it was more likely that the jury, if misled by the pronoun, connected the incorrect pronoun to Dr. Urquiza.

2. Logic

Furthermore, it would be illogical for the jury to apply Dr. Urquiza's testimony to defendant's testimony. The expert testimony was to the effect that there is a reason that children who are sexually abused initially deny that there has been any abuse. This can logically be applied only to whether A.C. was telling the truth in her later reporting of the abuse. It has no logical connection to whether defendant is being truthful.

B. Lack of Prejudice

Defendant contends that the mistaken pronoun violated his right to due process by lightening the prosecution's burden of proving defendant's guilt beyond a reasonable doubt. Therefore, he argues, we must apply the federal standard, asking whether the error was harmless beyond a reasonable doubt. (See Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].) Even assuming, without deciding, that defendant is correct concerning the standard to be applied, we conclude the error was harmless.

It is unlikely the jury misused Dr. Urquiza's testimony to evaluate defendant's credibility. As noted, the only logical use for Dr. Urquiza's testimony was to evaluate A.C.'s credibility. Immediately after Dr. Urquiza testified, the trial court instructed the jury concerning the proper use of his testimony: "Dr. Urquiza's testimony is different from any other testimony you are going to hear in this case. The reason for that is that his testimony is limited purpose testimony. And that is different. The reason it's different is that Dr. Urquiza's testimony is not evidence that the Defendant committed any crimes that are charged against him. [¶] Instead, you may consider the evidence that Dr. Urquiza offered solely for the purpose of whether or not [A.C.'s] conduct in not reporting was not inconsistent with the conduct of someone who has been molested. And so, therefore, his testimony is solely for that purpose." This instruction properly focused the jury's attention, immediately after Dr. Urquiza testified, on A.C.'s credibility. We therefore conclude that the use of the incorrect pronoun in the later instruction was harmless beyond a reasonable doubt.

(California Court of Appeal Opinion at 3-6.)

Here, at cannot be said that the incorrect pronoun used in this jury instruction was

an error that had a "substantial and injurious effect" on the outcome of petitioner's trial.  See

Sarausad, 479 F.3d at 692.  As the California Court of Appeal reasoned, the instruction as given

8

1 at petitioner's trial would not prompt the jury to wrongly evaluate petitioner's credibility.

2 Rather, the most reasonable alternative interpretation of the instruction as given is that the "his"

3 referred to Dr. Urquiza, and the jury's evaluation of Dr. Urquiza's – who testified briefly and to

4 limited purpose – credibility would not have substantially impacted the trial's outcome.  Thus,

5 petitioner's challenge to this jury instruction fails to state a cognizable federal claim for habeas

6 relief.  See Middleton, supra, 768 F.2d at 1085.

7            Moreover, even if petitioner stated a cognizable federal claim, it does not meet the

8 AEDPA standard for the granting of habeas relief.  The California Court of Appeal's decision

9 finding no prejudicial error based upon the jury instruction as given, was neither contrary to nor

10 involved an unreasonable application of clearly established federal law.  See 28 U.S.C. §

11 2254(d).  Thus petitioner is not entitled to habeas relief on this aspect of his claim of jury

12 instruction error.

13            2.  Incorrect Instructions on Reasonable Doubt (Ground Two)

14            Petitioner claims that CALCRIM Nos. 220 and 222, with which the jury was

15 instructed, "did not properly or legally pertain to the issues to be decided in the charged

16 offenses."  (Amended Pet. at 4.)  In an attempt to clarify this claim, the court must turn back to

17 petitioner's opening brief on direct appeal where he argued that, taken in conjunction, these two

18 instructions failed to properly instruct the jury at his trial on reasonable doubt.  (Resp't's Lod.

19 Doc. 1 (hereinafter AOB) at 16-23.)

20            CALCRIM No. 220 states in relevant part: "In deciding whether the People have

21 proved their case beyond a reasonable doubt, you must impartially compare and consider all the

22 evidence that was received throughout the entire trial."  (CT at 237.  See also AOB at 16.)

23 CALCRIM  No. 222 states in relevant part: "You must use only the evidence that was presented

24 in the courtroom."  (CT at 238.  See also AOB at 16.)

25            Petitioner asserts that these instructions failed to inform the jury that a lack of

26 evidence  – specifically, a lack of evidence corroborating the victim's testimony – should be

1  considered in deciding whether a reasonable doubt exists.  (AOB at 20.)  Petitioner argues that

2  this error in the jury instructions "led jurors here to convict [petitioner] on a lesser showing than

3  due process requires" and impaired his ability to defend himself by raising a reasonable doubt.

4  (Id. at 21.)

5          The California Court of Appeal rejected petitioner's arguments with respect to the

6  two challenged instructions, reasoning as follows:

7          Defendant argues that the standard CALCRIM instructions
           concerning reasonable doubt and the definition of evidence
8          prevented the jury from considering that a reasonable doubt could
           arise from an absence of evidence. We disagree.
9
           The portion of CALCRIM No. 220 with which defendant finds
10         fault is as follows: "In deciding whether the People have proved
           their case beyond a reasonable doubt, you must impartially
11         compare and consider all the evidence that was received
           throughout the entire trial." (Italics added.)
12
           The portion of CALCRIM No. 222 with which defendant finds
13         fault is as follows: "You must use only the evidence that was
           presented in this courtroom."
14
           As to CALCRIM No. 220, we recently rejected in People v.
15         Guerrero (2007) 155 Cal.App.4th 1264 the same contention that
           defendant raises here. "Contrary to defendant's suggestion,
16         CALCRIM No. 220 instructs the jury to acquit in the absence of
           evidence. In addressing defendant's claim, we consider whether a
17         'reasonable juror would apply the instruction in the manner
           suggested by defendant.' [Citation.] The jury is instructed to
18         consider only the evidence, and to acquit unless the evidence
           proves defendant's guilt beyond a reasonable doubt. If the
19         government presents no evidence, then proof beyond a reasonable
           doubt is lacking, and a reasonable juror applying this instruction
20         would acquit the defendant." (People v. Guerrero, supra, at pp.
           1268-1269.)
21
           Likewise, the argument that CALCRIM Nos. 220 and 222,
22         combined, violated due process was rejected in People v. Flores
           (2007) 153 Cal.App.4th 1088, 1092-1093. (See also People v. Rios
23         (2007) 151 Cal.App.4th 1154; People v. Westbrooks (2007) 151
           Cal.App.4th 1500.)
24
           Accordingly, defendant's contention is without merit.
25

26  (California Court of Appeal Opinion at 6-7.)

                                    10

1          Here too, petitioner fails to state a cognizable claim for federal habeas relief, since

2   he cannot show that the giving of these challenged jury instructions so infected his trial with

3   unfairness as to rise to the level of a due process violation.  See Hines, 658 F.2d at 672.  The

4   state appellate court's decision rejecting his challenge to these two instructions was neither

5   contrary to nor an unreasonable application of clearly established federal law.  See Westbrooks v.

6   Director of California Department of Corrections, Civil No. 09cv136-JLS (POR), 2010 WL

7   1573832, at *6 (S.D. Cal. Jan 29, 2010) (rejecting an identical challenge to CALCRIM 220);

8   Campbell v. Haws, No. CV 09-632-CJC(E), 2009 WL 2241805, at *4 (C.D. Cal. July 23, 2009)

9   (same).  Rather, as respondent points out, the California Court of Appeal followed its previous

10  ruling in People v. Flores, 153 Cal. App. 4th 1088, which in turn relied on the United State

11  Supreme Court's decision in Victor v. Nebraska, 511 U.S. 1, 5 (1994).  In Victor, the Supreme

12  Court held: "The Constitution does not require that any particular form of words be used in

13  advising the jury of the government's burden of proof.  Rather, taken as a whole, the instructions

14  must correctly convey the concept of reasonable doubt to the jury."  511 U.S. at 5.  Because

15  petitioner has failed to show that in his case the California Court of Appeal unreasonably applied

16  Victor or any other United States Supreme Court precedent, he is not entitled to federal habeas

17  relief on this claim.

18                    3.  Cumulative Instructional Error (Ground Three)

19          Petitioner next claims that the cumulative effect of the alleged instructional errors

20  described above entitle him to federal habeas relief.   The California Court of Appeal rejected

21  this argument as well, stating:  "Having concluded that any error in giving the instruction

22  concerning Dr. Urquiza's testimony was harmless and that the other instructions were not

23  erroneous, we conclude that there was no cumulative effect of errors and defendant's due process

24  and fair trial rights were not violated."  (Court of Appeal Opinion at 7-8.)

25          The undersigned finds no fault with the state appellate court's reasoning and

26  adopts it.  Petitioner is not entitled to federal habeas relief based on his claim of cumulative

1    instructional error.

2                     4.  <u>Failure to Instruct on Lesser Included Offense (Ground Five)</u>

3              Petitioner also claims that the trial court improperly failed to instruct the jury in

4    his case on a lesser included offense.  (Amended Pet. at 5.)  In his petition for writ of habeas

5    corpus filed in the Sacramento County Superior Court petitioner asserted: "The [P]eople's case

6    was one of credibility between the defendant and the [P]eople's witness Alyssa.[3]  The lesser

7    included misdemeanor C.M. [child molestation] (P.C. 647(a)[4]) should have been presented to the

8    jurors" rather than giving them an "unwarranted all-or-nothing choice." (Resp't's Lod. Doc. 7 at

9    4.[5])  Petitioner also contended in that state habeas petition that the trial court's failure to instruct

10   on the lesser included offense rendered his trial "fundamentally unfair."  (<u>Id</u>.)

11             The Sacramento County Superior Court denied relief on this claim, finding it was

12   barred, since it "could and should have been raised on appeal, but [was] not." (Superior Court

13   Opinion at 1.)  The court nonetheless addressed the merits of petitioner's argument, since he was

14   also claiming ineffective assistance of appellate counsel based upon his counsel's failure to raise

15   this claim on appeal.  (<u>Id</u>. at 1-2.)  Addressing the merits, the Sacramento County Superior Court

16   rejected petitioner's argument in this regard, reasoning:

17                    Petitioner also claims that the trial court failed to instruct on the
                    lesser included offense of misdemeanor child molestation.
18                    However, misdemeanor child molestation is not a lesser included
                    offense to a violation of Penal Code section 288(a) or 288(b)(1).
19                    (See People v. Lopez (1998) 19 Cal. 4th 282, 292.)  Petitioner has
                    not shown that appellate counsel should have raised this claim on
20                    appeal.

21

22   (<u>Id</u>. at 2-3.)  As noted above, both the California Court of Appeal and the California Supreme

23             [3] Variously referred to as A.C. or "the victim."

24             [4] This appears to be an erroneous reference to California Penal Code § 647.6(a)(1) which
     makes it a misdemeanor to annoy or molest any child under 18 years of age.

25
             [5] In lieu of another numbering system, references to Resp't's Lod. Doc. 7 are based on the
26   page numbers of the habeas petition form.

1   Court summarily denied petitioner's subsequent habeas petitions which included this claim.

2          Here, because the Sacramento County Superior Court reached a decision on the

3   merits of petitioner's claim but only briefly explained its reasoning, this court "independently

4   reviews the record to determine whether habeas corpus relief is available under section 2254(d)."

5   Himes, supra, 336 F.3d at 853.

6          A claim that a state court violated a federal habeas petitioner's due process rights

7   by omitting a jury instruction requires a showing that the error so infected the entire trial that the

8   resulting conviction violated due process.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977);

9   Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  In cases in which a petitioner

10   alleges that the failure to give an instruction violated due process, his burden is "especially

11   heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than

12   a misstatement of the law."  Henderson, 431 U.S. at 155.  Here, petitioner fails to meet this heavy

13   burden.

14          The United States Supreme Court has held that the failure to instruct on a lesser

15   included offense in a capital case is constitutional error if there was evidence to support the

16   instruction.  See Beck v. Alabama, 447 U.S. 625, 638 (1980).  The Supreme Court has not

17   decided whether this rationale also extends to non-capital cases.  See Turner v. Marshall, 63 F.3d

18   807, 818 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir.

19   1999).  The Ninth Circuit, like several other federal circuits, has declined to extend Beck to find

20   constitutional error arising from the failure to instruct on a lesser included offense in a

21   non-capital case.  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000), cert. denied 534 U.S.

22   839 (2001); Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984); see also Valles v. Lynaugh,

23   835 F.2d 126, 127 (5th Cir. 1988); Trujillo v. Sullivan, 815 F.2d 597, 602 (10th Cir. 1987); Perry

24   v. Smith, 810 F.2d 1078, 1080 (11th Cir. 1987).

25           Because petitioner's was not a capital case, even if California Penal Code §

26   647.6(a)(1) was a lesser included offense of California Penal Code § 288 (which it is not), the

1   state trial court's failure to give a lesser included offense instruction did not rise to the level of a

2   constitutional error for which federal habeas relief is available.  See Windham v. Merkle, 163

3   F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included

4   offenses in a non-capital case does not present a federal constitutional question.").  To find a

5   constitutional right to a lesser-included offense instruction in this non-capital case would require

6   the application of a new rule of law, which the court may not do in a habeas proceeding.  Teague

7   v. Lane, 489 U.S. 28 (1989); Solis, 219 F.3d at 929 (habeas relief for failure to instruct on lesser

8   included offense in non-capital case barred by Teague because it would require the application of

9   a new constitutional rule); Turner, 63 F.3d at 819 (same).  Under these circumstances, the

10  decision of the California courts denying petitioner relief as to this claim was not contrary to

11  clearly established federal law.

12          Moreover, although "the defendant's right to adequate jury instructions on his or

13  her theory of the case might, in some cases, constitute an exception to the [foregoing] general

14  rule," Solis, 219 F.3d at 929, petitioner's was not such a case.  See Clark v. Brown, 450 F.3d

15  898, 904 (9th Cir.2006) (state court's jury instructions violate due process if they deny the

16  criminal defendant "a meaningful opportunity to present a complete defense") (quoting

17  California v. Trombetta, 467 U.S. 479, 485 (1984)).  The record before this court reflects that

18  petitioner was provided a meaningful opportunity to present a complete defense to the charges

19  brought against him.  Petitioner is therefore not entitled to habeas relief on this aspect of his jury

20  instruction error claim.

21          B.      Sufficiency of the Evidence (Ground Four)

22                  Petitioner claims that his "convictions must be reversed as far as they are based on

23  . . . a gun allegation [as] there was no actual proof that a gun was used."  (Amended Pet. at 5.)  In

24  his habeas petition filed in the Sacramento County Superior Court, petitioner asserted: "The

25  prosecutor never introduced any physical evidence of an actual gun, which petitioner was

26  suppose [sic] to have used in the charged offenses.  Therefore an important element of the

14

1  charged offense, use of a firearm, to with [sic] use of force was never proven." (Resp't's Lod.

2  Doc. 7 at 3.)

3         The Superior Court found this claim barred, because petitioner did not raise it on

4  direct appeal. (Superior Court Opinion at 1.) However, as with the lesser included offense

5  instruction claim, the Superior Court also addressed the merits insofar as they pertained to

6  petitioner's ineffective assistance of counsel claim. The Superior Court also rejected the claim

7  on the merits, reasoning as follows:

8              Petitioner first claims that there was no proof that a gun was used,
             apparently to support the counts involving use of force, violence,
9            or duress. There is no requirement that a gun be used in violation
             of Penal Code section 288(b)(1), only that Petitioner used "force,
10           violence, duress, menace, or fear of immediate and unlawful bodily
             injury." (See CALCRIM No. 1111.) Even without the use of a
11           gun, there could have been the use of force, violence, duress,
             menace, or fear. Since Petitioner has not attached any transcripts
12           to show that such evidence is lacking, he has not shown that
             counsel's failure to include this issue on appeal was unreasonable
13           or prejudicial.

14  (Superior Court Opinion at 2.)

15         The Superior Court reached a decision with respect to this claim on the merits but

16  supplied minimal reasoning in doing so. Accordingly, this court "independently reviews the

17  record to determine whether habeas corpus relief is available under section 2254(d)." Himes,

18  336 F.3d at 853.

19         The Due Process Clause of the Fourteenth Amendment "protects the accused

20  against conviction except upon proof beyond a reasonable doubt of every fact necessary to

21  constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There

22  is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

23  favorable to the prosecution, any rational trier of fact could have found the essential elements of

24  the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he

25  dispositive question under Jackson is 'whether the record evidence could reasonably support a

26  finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir.

2004) (quoting <u>Jackson</u>, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces

a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction

on federal due process grounds."  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  In

order to grant the writ, the federal habeas court must find that the decision of the state court

reflected an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.

<u>Id.</u> at 1275 & n.13.

After reviewing the record, the undersigned concludes that there was sufficient

evidence introduced at petitioner's trial that he used "force, violence, duress, menace, or fear of

immediate and unlawful bodily injury" in the commission of lewd acts against a child such that a

rational jury could have found him guilty beyond a reasonable doubt of violating California Penal

Code § 288(b)(1).  The state's theory of the case was that after petitioner threatened the victim

with a gun, every subsequent lewd act was committed upon her by use of "force, duress, or

menace" because she had "in the back of her mind the threat of bodily harm to herself or her

family[.]" (Reporter's Transcript on Appeal (RT) at 692.)  At trial the victim testified as follows:

Q: Okay.  What happened when you went into his room?

A: He had a gun.

Q: He had a gun?

A: Yes.

Q: What happened with the gun?

A: He – he put it in my mouth and he said if I ever said anything he
would kill my mom or me or one of my brothers.

Q: Do you remember whether or not you had a reaction to that?

A: I was crying.

Q: How did it make you feel when he said those words to you?

A: I was scared.

(<u>Id</u>. at 218-219.)

1    The victim also testified at trial that petitioner kept several guns in the house (id.

2  at 226); that, if she told him she did not want to commit sexual acts with him, he would tell her

3  "Fuck you, or, [s]hut up" (id. at 241); that she would do as he told her "[b]ecause I didn't want

4  him to do anything to me or one of my brothers or my mom" (id. at 245); that she thought about

5  the threat petitioner had made when he put the gun in her mouth "all of the time" and believed

6  because of that threat that she "had to do what he said."  (Id.)

7    Petitioner's jury also heard the victim further testify that, when her mother was

8  out of town, petitioner made her sleep in his bedroom and commit sexual acts by telling her that

9  "[i]f I didn't then Chucky[6] would come out," that "Chucky was at the end of the bed and he was

10  going to, like, get me if I didn't do what he said," and that she did as petitioner told her "because

11  of what he said about Chucky."  (Id. at 267-268.)  The victim testified that she didn't tell anyone

12  of these incidents at the time because she was scared and didn't want petitioner to hurt her or

13  others in her family.  (Id. at 270.)  She testified that, on some occasions, petitioner "put a pillow

14  or blanket over [her] head" while he molested her and that she didn't tell her mother, brothers, or

15  anyone else about the abuse because "I was scared."  (Id. at 277-79.)  Finally, the victim testified

16  that, when a police officer questioned her about possible abuse by petitioner, she didn't report it

17  "[b]ecause [petitioner] was still in the house and I didn't want anything to happen."  (Id. at 280.)

18    Thus, under Jackson, the evidence of record here reasonably supported the jury's

19  finding that petitioner committed lewd and lascivious acts against the victim "by use of force,

20  violence, duress, menace or fear" beyond a reasonable doubt.  See Jackson, 443 U.S. at 319.

21  Petitioner is therefore not entitled to federal habeas relief on this ground.

22  /////

23  /////

24  /////

25

26    [6] A "scary character from a scary movie" of whom the victim was afraid.  (RT at 268.)

17

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that The Clerk of Court substitute Mike McDonald, Warden, High Desert State Prison, as respondent in the docket of this case.

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus (Doc. No. 10) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 16, 2010.

Dale A. Drozd
_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD3
buckner2279.hc

18